Michael Jason Lee, Esq. (State Bar No. 206110)
**LAW OFFICES OF MICHAEL JASON LEE, APLC**
4660 La Jolla Village Drive, Suite 100
San Diego, California 92122
Tel: (858) 550-9984
Fax: (858) 550-9985
Email: michael@mjllaw.com

Christopher J. Beal, Esq. (State Bar No. 216579)
**DILLON MILLER & AHUJA, LLP**
5872 Owens Avenue, Suite 200
Carlsbad, California 92008
Telephone: (858) 587-1800
Facsimile: (442) 325-1637
Email: cbeal@dmalaw.com

Attorneys for Applicant,
Hedrick House Limited

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Application of* | Case No.: |
| Hedrick House Limited | **APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Applicant, | |
| For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | |

# **TABLE OF CONTENTS**

**Page(s)**

APPLICATION ..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...................................2

    I.       INTRODUCTION..................................................................................2

    II.      RELATED PROCEDURAL HISTORY .................................................3

           A.     Prior Application Filed in This District ......................................3

           B.     HHL Has Met and Conferred with Respondents'
                Counsel Concerning Its Document Requests;
                Counsel Acknowledges Need for Court Involvement ................4

    III.     STATEMENT OF FACTS......................................................................5

           A.     HHL Secures Two Payment Solutions from Fletcher.................5

           B.     HHL Retains Litigation Counsel in the UK to File a
                Claim Against Fletcher in the Hight Court of London ...............8

           C.     A "Jason Silver" Subsequently Claims Responsibility
                for the Two MIDs Used, But His Communications
                Appear Calculated at Further Delay...........................................10

           D.     Amounts Due from Fletcher.......................................................10

    IV.     THE CONTEMPLATED DISCOVERY ..............................................10

    V.      HHL'S LOCATION ............................................................................11

    IV.     THE APPLICATION SATISFIES SECTION 1782'S
          REQUIREMENTS ...............................................................................11

            A.     Applicant is an "Interested Person"...........................................12

           B.     The Requested Discovery is for Use in Conjunction with
                 Proceedings Before Foreign Tribunals ......................................12

           C.     Jaspreet Mathur Resides in and Can Be Found in the
                 Central District of California......................................................13

D.     Emblaze One Inc. Operates in and Can be Found in the
Central District of California ...................................................................13

E.     Discretionary Considerations Merit Granting This Application ...............13

1.     Neither Mathur nor Emblaze One Inc. Will Be
Parties To the UK Litigation ............................................................14

2.     The High Court of London Would Be Receptive to
the Discovery Sought ......................................................................14

3.     HHL Is Not Attempting to Circumvent Any
Proof Gathering Restrictions of the High Court
of London ......................................................................................15

4.     The Discovery Seeks Information and Documents
Relevant to HHL's Claims Against Fletcher and His
Asserted Defenses to Liability ........................................................16

VII.    CONCLUSION ..................................................................................17

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
  793 F.3d 1108 (Ninth Cir. 2015) ................................................. 11

*Brandi-Dohorn v. IKB Deutsch Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ...................................................... 16

*Hansainvest Hanseatische Investment-GmbH*,
  364 F.Supp.3d 243 (S.D.N.Y 2018).............................................. 13

*In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*,
  Case No. Ml 9-88, 2006 WL 3844464, at *7 (S.D.N.Y.  Dec. 29, 2006)...... 16

*In re Application of Grupo Qummam*,
  No. M 8-85 (DC), 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ......... 15

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998)..................................................... 12

*In re Crown Prosecution Serv.*,
  870 F.2d 686 (emphasis added) ................................................ 12

*In re Euromepa S.A.*,
  51 F.3d 1095 (2d Cir. 1995) .................................................. 15

*In re Hansainvest Hanseatische Investment-GmbH*,
  364 F.Supp.3d 243 (S.D.N.Y. 2018)............................................... 3

*In re Letters Rogatory Issued by the National Court of First Instance in Commercial Matters N.23 of the Federal Capital of the Argentinean Republic*,
  144 F.R.D. 272, 277 n. 4 (3d Cir. 1992) ..................................... 12

*In the Matter of the Application of Oxus Gold PLC For Assistance Before a Foreign Tribunal*,
  2007 U.S. Dist. LEXIS 24061, at *18 (D.N.J. April 2, 2007) ............... 12

*Intel Corp. v.  Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ....................................................... passim

*John Deere Ltd. v. Sperry Corp.*,
  754 F.2d 132 (3d Cir. 1985)................................................... 12

*Republic of Kazakstan v. Biedermann Int'l*,
  168 F.3d 880 (5th Cir. 1999).................................................. 12

///

**STATUTES**

28 U.S.C §1782(a) ........................................................................................ 14, 15

28 U.S.C. § 1782 ........................................................................................ passim

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Hedrick House Limited ("HHL"), by and through its undersigned counsel, the Law Offices of Michael Jason Lee, APLC, hereby brings the instant Application for the Issuance of a Subpoena for the Taking of a Deposition and Production of Documents for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 ("Application") for the entry of an order from this Court allowing HHL to take the deposition testimony of Jaspreet "Jas" Mathur and Emblaze One Inc, and to obtain documents.

This Application is supported by the Declaration of Zhang Li ("Li Declaration"), General Manager of Operations for HHL; the Declaration of Christopher John Jones, HHL's litigation counsel in the United Kingdom; and the Declaration of Michael Jason Lee.

Accordingly, HHL respectfully requests that this Application is granted in its entirety.

Dated:  April 24, 2020

Respectfully Submitted,
**LAW OFFICES OF MICHAEL JASON LEE, APLC**

*/s/ Michael Jason Lee*

Michael Jason Lee, Esq.
Michael@mjllaw.com
Attorney for Hedrick House Limited

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Applicant Hedrick House Limited ("HHL") respectfully requests that the Court grant the instant application for the issuance of a subpoena for the taking of a deposition and the production of documents for use in a foreign proceeding under 28 U.S.C. § 1782. HHL seeks an order allowing it to obtain documents and deposition testimony from Jaspreet "Jas" Mathur and his company Emblaze One Inc. (together, "Respondents"). Respondents have information and documents related to approximately $295,541.52 owed to HHL and its client, BetOnline ("BOL") by a United Kingdom citizen named Nicholas Christian Fletcher.

In late 2018, HHL obtained two credit or debit card payment processing solutions from Fletcher for use by BOL. Unbeknownst to HHL at the time, both of Fletcher's payment solutions were provided to him by Respondents. Once HHL discovered Mathur's involvement, it reduced and subsequently terminated its use of Fletcher's solutions. Although two relatively small payments were made for the processed payment transactions emanating from BOL's websites, neither HHL nor BOL ever received the vast bulk of funds due.

In July 2019, HHL retained London solicitor Christopher John Jones ("Jones") to pursue the funds owed by Fletcher, including by filing a claim with the High Court of London if Fletcher failed or refused to remit the funds. Jones served Fletcher with a "pre-action protocol letter," which is a necessary procedural step required by the High Court of London before a claimant may file litigation there. In response, even while acknowledging his involvement, Fletcher denied legal liability and pled ignorance regarding the sums owed. Instead, Fletcher has claimed that Mathur was due to receive those funds, once released by the acquiring bank, and that they would in turn be transmitted to BOL. To date, neither HHL nor BOL has received the funds.

Through the instant application, HHL seeks the aid of this Court in taking discovery from Mathur and Emblaze One Inc. concerning the payment transactions at issue; the identity of the acquiring bank or any other intermediary; the amount of funds owed, including payments received from others in the processing chain and any claimed chargebacks, fees, or other offsets; and the involvement of certain other parties in providing Fletcher's payment solutions to HHL

and BOL. HHL seeks this and related information for use in an action against Fletcher in the High Court of London.

## II.    RELATED PROCEDURAL HISTORY

### A.    Prior Application Filed in This District

On March 5, 2020, HHL filed a §1782 application in this District seeking information and documents from Mathur and Emblaze One, Inc. (See *In re Application of Hedrick House Limited*, C.D. Cal. Case No. 20-mc-00005-DOC-DFM (the "Prior Application").) On March 16, 2020, Respondents filed an opposition to the Prior Application. On March 31, 2020, the Hon. Douglas F. McCormick issued an Order denying HHL's application.

The Court denied HHL's Prior Application predominantly on two grounds. First, the Court found that HHL had not satisfied one of the three statutory criteria for obtaining discovery under § 1782—that the discovery sought is "for use in a proceeding in a foreign or international tribunal." (Order, p. 2.) Although the Court noted that "the Supreme Court has rejected the view that § 1782 requires proceedings to be 'pending' or 'imminent,' a proceeding must be 'within reasonable contemplation,'" the Court also "agreed with those courts that have determined that 'reasonable contemplation' means that proceedings cannot be speculative …." (Order, p. 2.)

In reviewing the Prior Application, the Court found that "[a]lthough HHL says that it 'anticipates' that it will initiate litigation against Fletcher and Fletcher's related entities in the United Kingdom, nothing in HHL's Application demonstrates anything more than the mere possibility that HHL will do so." (Id.) By way of example, the Court further noted that "HHL makes no showing, for instance, that it has hired litigation counsel in the United Kingdom." (Order, p. 2 citing *In re Hansainvest Hanseatische Investment-GmbH*, 364 F.Supp.3d 243, 249 (S.D.N.Y. 2018).)

In fact, HHL had retained litigation counsel in the United Kingdom, in July 2019, for the purpose of filing a claim against Fletcher with the High Court of London. Although the Prior Application referred to UK counsel's involvement in pursuing HHL's claim against Fletcher, it unfortunately did not specifically detail counsel's retention or his efforts on HHL's behalf. HHL remedies that perceived deficiency here in Section III.B, below. Further, HHL's UK litigation

counsel—solicitor Christopher John Jones—has also submitted a declaration in support of the instant application.

Second, the Order found that HHL's proposed document requests were not "narrowly-tailored, and [sought] the production of a vast array of documents unrelated to Fletcher." (Order, p. 3.) Indeed, HHL sought, and continues to seek, information and documents related to several seeming third-parties. (See Lee Decl. Ex. Q.) While Respondents—in opposing the Prior Application—raised the specter that HHL's request for discovery may be an attempt to gain sensitive information from its competitors,[1] each of the parties identified in HHL's document requests was involved in providing Fletcher's payment solutions. In the present application, HHL more clearly identifies each parties' involvement.

Moreover, HHL has significantly reduced the number of requests and tethered its requests to the processing services provided and the facts directly related thereto. (See Lee Decl. Ex. Q.) HHL respectfully submits that its requests are not burdensome or intrusive. On that issue, Mr. Mathur's declaration in opposing the Prior Application notably claimed that he had limited to no documents responsive to HHL's prior document requests, despite their seeming breadth: "If I did have any responsive documents, which I am unlikely to given my limited involvement in the underlying transactions, I would not be able to produce them to a third party given the privacy and business interests of these third parties." (ECF No. 3, pp. 19-20, ¶ 4.)

### B.     HHL Has Met and Conferred with Respondents' Counsel Concerning Its Document Requests; Counsel Acknowledges Need for Court Involvement

Before filing the instant Application, HHL attempted to meet and confer with Respondents' counsel in an effort to more narrowly tailor HHL's document requests. (See Lee Decl. Ex. K.) After exchanging multiple correspondence, Respondents' counsel ultimately stated: "[W]e need a court order either way. I think you almost need to refile the application with your changes, I will refile my opposition with my changes, and then the court can decide

---

[1] In both Respondents' Opposition and their counsel's meet and confer correspondence, Respondents have expressed a reluctance to provide documents that may implicate any third-party privacy concerns. To the extent any such concerns are real and not feigned, which is doubtful, HHL is willing to enter into an appropriate protective order.

if and/or what we need to produce." (Lee Decl. Ex. O.) The parties having arrived at an impasse, HHL has filed the instant Application.

## III.  STATEMENT OF FACTS

### A.    HHL Secures Two Payment Solutions from Fletcher

Applicant Hedrick House Limited ("HHL") is a payment solutions services company, which primarily serves the Internet casino and sports betting industry. In general, companies utilize HHL's services to source payment solutions for the purpose of processing credit or debit card payment transactions for their customers. The market for HHL's services was born as a result of the high-risk nature of the Internet casino and sports betting industry. The banking complexities resulting therefrom often makes it practical for companies to outsource payment processing services to third party companies and/or individuals that are dedicated to establishing, developing and sustaining processing relationships. (Li Decl. ¶ 6.)

In this case, HHL was used by BOL to source payment processing solutions for the purpose of facilitating payments from BOL's customers. In late 2018, HHL sourced a payment solution from Mr. Fletcher through a company named Switch2Secure. Mr. Fletcher represented that he could provide a reliable payment solution that was suitable for BOL. (Li Decl. ¶ 7.)

In November 2018, Fletcher provided a Merchant Identification Number ("MID")—that is, a unique account-type code given to a business by payment processors before a merchant begins processing payment transactions through a particular banking channel. MIDs are issued by an "acquiring bank" (sometimes simply referred to as an "acquirer"), which is the financial institution that processes payment card transactions. The acquiring bank links merchants with "issuing banks"—the bank that issue credit and debit cards to its customers. (Li Decl. ¶ 8.)

On the basis of Mr. Fletcher's representations, HHL arranged for processing to commence using the MID he provided. Mr. Fletcher was, at all times, the direct point of communication for agents working on behalf of HHL, including as to matters relating to monies owed for processing across this initial payment processing solution and a second solution described in more detail below. (Li Decl. ¶ 9.)

The first payment solution was utilized from approximately November 28, 2018 to December 8, 2018. Processing was terminated, however, because HHL determined there were irregularities in the processing. Mr. Fletcher claimed the irregularities were outside of his control, which HHL accepted at face value at that time. (Li Decl. ¶ 10.)

On or about January 8, 2019, HHL received a payment toward the balance on the first payment solution of €10,396.60 from Emblaze One Inc. Despite this payment, Mr. Fletcher continues to owe funds for transactions processed during this time. (Li Decl. ¶ 11.)

HHL sourced Mr. Fletcher's second payment solution through a company named GatewayPRO. The second payment solution was first utilized on approximately December 14, 2018. On December 15, 2018, GatewayPRO provided HHL with a proposed Merchant Services Agreement (the "MSA") corresponding to the second payment solution. (Li Decl. ¶ 12, Ex. E.) The counterparty for the MSA was "Technomatix LTD. (dba Canon Payments)". Before receiving the MSA, HHL was unaware that either Technomatix LTD or Canon Payments was involved with Mr. Fletcher's two payment solutions. (Li Decl. ¶ 13.)

The mention of "Canon Payments" in the agreement raised HHL's concerns because HHL suspected Canon Payments was affiliated with Mr. Mathur. HHL was concerned with Mr. Mathur's involvement because HHL believes that Mr. Mathur is a serial fraudster and, by natural extension, an individual it would never knowingly do business with directly or indirectly. HHL believes that Mr. Mathur takes advantage of clients in high risk industries – like online gaming – by providing access to merchant card processing services, delaying payments owed to the merchant, and then claiming a variety of excuses, such as payments are being held up by a bank or other third party. (Li Decl. ¶ 14.)

Upon investigation, HHL determined that Mr. Mathur was likely directly connected with the entity. For example, Mr. Mathur's LinkedIn profile reflected that he was a "Director" at "Canon Payments." (Li Decl. ¶ 15; Lee Decl. Ex. M.) Similarly, as of December 31, 2018, Canon Payment's website (canonpayments.com) reflected that the company was a "division" of Emblaze One, a company which Mr. Mathur did not dispute owning or controlling when opposing HHL's Prior Application. (Li Decl. ¶ 16, Ex. F.)

HHL initially raised these concerns with GatewayPRO in December 2018. At the time, GatewayPRO acknowledged that it had sourced the payment solution from Fletcher. It subsequently inquired with Fletcher, who acknowledged that he was re-selling both payment solutions that had been presented to him by Mr. Mathur and his company, Emblaze One Inc., both of which are the subject of the instant application. (Li Decl. ¶ 17, Ex. G.)

Once HHL confirmed Mr. Mathur's involvement, processing volume through Mr. Fletcher's second payment solution was drastically reduced, and then shortly thereafter terminated in full on January 9, 2019. (Li Decl. ¶ 18.) Shortly thereafter, an agent of HHL inquired with Mr. Fletcher regarding the balance owed on the second payment solution. Mr. Fletcher, in turn, inquired with Mr. Mathur via a series of emails beginning January 18, 2019 and later forwarded to the HHL agent on January 30, 2019. (Li Decl. ¶ 19, Ex. H.)

The first email of the email chain is from an HHL agent to Fletcher at his nick@marbsone.com email address. (See Li Decl. Ex. H at p. 3.) In it, the agent references a "total amount of the [settlement] report [that] was for $243,766.48," and a wire payment of $38,400. The agent asks, among other things, whether the $38,400 is the "first of several partial payments that will add up to the total of the settlement $243,766.48." Id.

Fletcher forwarded the inquiry to Mathur at his jas.mathur@emblazeone.com email address. (See Li Decl. Ex. H at p. 3.) Somewhat confusingly, Mathur states that "$39,221.12 is the first of several payments which will sum up to $243,766.48." It is unclear why Mathur identifies the first payment as $39,221.12 when HHL had received a first payment of $38,400. Regardless, his email response—as well as his subsequent communications in this email chain—confirmed his involvement. (Li Decl. ¶ 21, Ex. H at p. 3.)

Moreover, Mathur's involvement was also confirmed by the signature line of his email, which identifies him as the CEO of "eMblaze ONE Inc." (See Li Decl. Ex. H at p. 3.) The payee of the $38,400 wire payment received by HHL was also "Emblaze One Inc." (Li Decl. ¶ 22.) The remainder of the email chain appears to reflect Fletcher's attempts over the following two weeks to obtain information from Mathur concerning the delay in paying the remaining balance owed. (See Li Decl. Ex. H at pp. 1-3.)

From then until approximately March 5, 2019, Fletcher continued to follow up with Mathur on the balance owed for the second processing solution. (See Li Decl. Ex. I.) From their email conversation, it appears that Fletcher and Mathur's payment solution involved an acquiring bank in China. (Id.) Regardless, in a March 5, 2019 email, Mathur represented that "They're [the acquiring bank] going to start releasing in tranches as of next month …." (See Li Decl. Ex. H, p. 1.) No such payments, however, were ever received. (Li Decl. ¶ 25.)

**B.      HHL Retains Litigation Counsel in the UK to File a Claim Against Fletcher in the High Court of London**

On July 5, 2019, HHL retained a London solicitor named Christopher John Jones to pursue the receivable owed by Fletcher in relation to transactions from BOL. (Declaration of Christopher John Jones ("Jones Decl.") ¶ 2.) Mr. Jones has been qualified to practice before the courts of England since 1983 and is a Partner in the legal firm CJ Jones Solicitors LLP, which he co-founded in 2005. (Id. ¶ 1.) Jones has submitted a declaration supporting HHL's Application.

Jones prepared a "pre-action protocol letter" and served Fletcher on July 10, 2019. (See Jones Decl. Ex. A.) Generally, a pre-action protocol letter is a procedural step required by the London court before civil claims may be commenced. Such a letter typically includes the basis on which the claim is made, a summary of the facts, and what the claimant wants from the defendant. (Jones Decl. ¶ 4.)

On July 22, 2019, Fletcher responded to the pre-action protocol letter by email. In his response, Fletcher denied having ever heard of HHL, disputed having ever been "in contact with anyone claiming to represent them," and claimed there was no proof that he was responsible for the funds owed from BOL's transactions: "You do not have any proof of these because it doesn't exist and there are no contract or agreements to substantiate this." (Jones Decl. ¶ 5, Ex. B.)

Despite these claims, however, Fletcher acknowledged that processing funds were owed: "You and your clients are making something very simple very complicated, my understanding as I type is that the PSP in China that is supposedly holding the funds is due to release it in early August when it is due to Jas Mathur." (Jones Decl. Ex. B.)

Fletcher further claimed that he had not acted as a broker, thus denying legal liability, but "merely referred/introduced a payment gateway that integrated to Jas Mathur, CEO, eMblze ONE Inc., trading as; http://www.emblazeone.com." Fletcher further denied that he had any "fiscal responsibility in any financial transaction between eMblaze and [BOL]!" (Jones Decl. Ex. B.)

In subsequent emails, Fletcher guessed that the funds would be received by August 14, 2019, which is when he said that the funds were due. He also offered to "speak to Mr Mathur and give you full visibility about the information he discloses to me and get him to settle your client." In subsequent emails, Fletcher claimed that he had spoken with Mathur and had received emails and WhatsApp texts from him. (Jones Decl. ¶ 7.)

On October 4, 2019, Jones wrote Fletcher pointing out that despite promises being made, HHL had not received payment. He requested certain documents and communications with Mathur that he had mentioned and any other correspondence by October 7, 2019. Fletcher, however, failed to provide any documentation supporting his denials of involvement or responsibility for the funds owed to HHL. (Jones Decl. ¶ 8.)

Following further investigation and analysis, HHL now believes Fletcher owes it $295,541.52 for certain credit card processing that occurred through two separate payment solutions provided by Fletcher. (Jones Decl. ¶ 9.) Despite Fletcher's repeated denials, he remains responsible for that debt owed to HHL and BOL. He claims, however, to have limited information and documentation concerning these funds. Rather, he claims that Mathur was ultimately responsible for providing the MIDs used to process debit and credit card transactions and that Mathur would have information and documentation relating to any credit card processing that occurred through the payment solutions. (Jones Decl. ¶ 10.)

Solicitor Jones's retention by HHL includes filing a formal claim with the High Court in London. According to Jones, information and documents obtained pursuant to Section 1782 would assist HHL with its claim in the High Court in London in evidencing and assessing the validity of what Fletcher says in his denial of these claims. (Jones Decl. ¶ 11.)

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782

### C.     A "Jason Silver" Subsequently Claims Responsibility for the Two MIDs Used, But His Communications Appear Calculated at Further Delay

In or about August 30, 2019, HHL's United States counsel received an unsolicited email from a "Jason Silver" claiming to be responsible for having secured the MIDs used by BOL to process credit and debit card transactions. (Lee Decl. Ex. P, p. 5.) In his August 30 email, Silver assured that he would provide an "initial payment" the following week "with the balance of whats [sic] owed paid out over the next 4-6 weeks." (Lee Decl. Ex. M, p. 5.) Despite multiple follow-up requests for information and payment by HHL counsel, however, Silver never made good on his promises. Ultimately, HHL considered these emails to be nothing more than a further delaying tactic by persons unknown. (Id., p. 1.)

### D.     Amounts Due from Fletcher

At the time of the instant application, HHL believes that it is owed approximately $295,541.52 by Fletcher. To summarize, this amount includes monies due (1) for the transactions processed from November 28, 2014 through December 8, 2018, and (2) for the transactions processed from December 14, 2018 through January 9, 2019. (Li Decl. ¶ 31.) As noted above, HHL completely ceased using the solutions supplied by Fletcher and Mathur to process transactions on or about January 9, 2019. (Li Decl. ¶ 18.)

## IV.   THE CONTEMPLATED DISCOVERY

HHL now seeks the assistance of this Court in obtaining information critical to its efforts to recover the funds owed to it. In particular, it seeks information and documents from Jaspreet Mathur and his company Emblaze One Inc. Mathur was centrally involved in making available the MIDs used by BOL to process transactions through the first and second payment solutions. HHL believes Mathur and Emblaze One Inc. to have documents and information that would reveal the particulars of the subject processing, including as to the identity of the acquiring bank, as well as information and documents concerning his relationship with Fletcher and multiple other third parties believed to be connected to the receivable. Mathur maintains a residence and currently resides in Los Angeles, California. (Li Decl. ¶ 36.)

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Once HHL has obtained the information and documents it seeks from Mathur, it is prepared to file suit against Fletcher with the High Court of London to recover the funds owed to it. (Li Decl. ¶ 37; Jones Decl. ¶ 11.)  A copy of HHL's proposed discovery is attached to the Lee Declaration as Exhibit "Q".

## V.   HHL'S LOCATION

HHL is an active limited company, incorporated in the British Virgin Islands on July 9, 2019, with a registered address of Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands.  (Li Decl. ¶ 3.)

## VI.   THE APPLICATION SATISFIES SECTION 1782'S REQUIREMENTS

28 U.S.C. §1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to ... the application of any interested person…

The fundamental purpose of §1782 is to provide a procedure whereby a qualified applicant may obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v.  Advanced Micro Devices, Inc.,* 542 U.S. 241, 247 (2004).  "Any interested person" includes litigants before foreign or international tribunals, and includes corporate entities as well as natural persons.  *Id*. at 256; *see Akebia Therapeutics, Inc. v. FibroGen, Inc*., 793 F.3d 1108, 1109 (Ninth Cir. 2015).

The policy  behind §1782 is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful, but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Id.,* at 262. The "prima facie showing mandated by the statute is that the application be made (1) 'by a foreign or international tribunal' or 'any interested person,' (2) that it be 'for use in a proceeding in a foreign or international tribunal,' and (3) that the person or entity from whom the discovery is sough be a resident of or be found in the district in which the application is filed."  *In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998); *Republic of Kazakstan v. Biedermann Int'l,* 168 F.3d 880, 881 (5th Cir. 1999).

### A.     Applicant is an "Interested Person"

As a plaintiff in a contemplated foreign litigation, HHL satisfies the "interested person" requirement of Section 1782. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke Section 1782"); *see also John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132 (3d Cir. 1985) (a party to foreign litigation is an interested person under Section 1782).

### B.     The Requested Discovery is for Use in Conjunction with Proceedings Before a Foreign Tribunal

As discussed above, HHL anticipates that soon after it receives the requested discovery, it will initiate litigation against Fletcher and his related entities in the High Court of London. While Section 1782 requires that the evidence sought be "for use in a proceeding in a foreign or international tribunal," the Supreme Court has rejected the view that "Section 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent.'" *Intel*, 542 U.S. at 259. Rather, it held that a foreign proceeding only had to be "within reasonable contemplation." *Id*.

The fact that the contemplated foreign proceedings have not yet commenced is of no moment. Indeed, in *Intel*, the Supreme Court held that "Section 1782(a) does not limit the provision of judicial assistance to pending [or imminent] adjudicative proceedings. 542 U.S. at 258. The *Intel* Court held that Section 1782(a) should be read only to require that it be "within reasonable contemplation" that the evidence sought would be used in a dispositive proceeding." *Id*. (citing *In re Crown Prosecution Serv*., 870 F.2d 686, 691 (emphasis added) ); see also *In re Letters Rogatory Issued by the National Court of First Instance in Commercial Matters N.23 of the Federal Capital of the Argentinean Republic*, 144 F.R.D. 272, 277 n. 4 (3d Cir. 1992) (rejecting argument that a "pending" proceeding is required under Section 1782); *In the Matter of the Application of Oxus Gold PLC For Assistance Before a Foreign Tribunal*, 2007 U.S. Dist. LEXIS 24061, at *18 (D.N.J. April 2, 2007)(requirements of Section1782 satisfied where applicant alleged that claim would be litigated in "near future").

Here, HHL has provided a sworn declaration from its General Manager attesting that "[o]nce HHL has obtained the information and documents it seeks from Mr. Mathur, it is

prepared to file suit against Mr. Fletcher in the High Court of London to recover the funds owed to it." (Li Decl. ¶ 36.) Towards that end—and as more fully described in Section III.B, above—in July 2019, HHL hired solicitor Jones as litigation counsel in the UK to pursue its claim against Fletcher in the High Court of London. Mr. Jones has served Fletcher with two pre-action protocol letters, which are a type of demand letter that is procedurally required before a claimant may initiate litigation before the High Court of London. And Mr. Jones has also submitted a sworn declaration supporting the instant application and describing his retention to sue Fletcher. (See, generally, Jones Decl.)

Thus, there are sufficient indications that a foreign proceeding is "within reasonable contemplation." See *Hansainvest Hanseatische Investment-GmbH*, 364 F.Supp.3d 243, 249 (S.D.N.Y 2018) (noting that applicant's retention of foreign litigation counsel, retaining experts, and sending a detailed demand letter were indicia that litigation was reasonably contemplated).

### C.   Jaspreet Mathur Resides in and Can Be Found in the Central District of California

Mathur's home and place of business are located in Los Angeles, California. Therefore, Mathur is within this Court's jurisdiction and subject to its authority over the requested discovery sought in this Application. (See Li Decl. ¶ 26.)

### D.   Emblaze One Inc. Operates in and Can be Found in the Central District of California

Emblaze One Inc. has a business address and service address in Los Angeles, California. As such, Emblaze One Inc. is within the Court's jurisdiction and subject to its authority over the requested discovery sought in this application. (See Li Decl. ¶ 27.)

### E.   Discretionary Considerations Merit Granting This Application

In addition, certain discretionary factors that "bear consideration in a ruling on a §1782 request" also favor granting the instant Application. *See, Intel,* 542 U.S. at 264-65. These include:

(1)   Whether the person from whom discovery is sought is a non-participant to the foreign proceeding thereby making the need for the aid more apparent;

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782

(2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court abroad to federal court judicial assistance;

(3) Whether the §1782 application for discovery is an attempt to circumvent the foreign proceeding or undermine foreign laws;

(4) Whether granting discovery that is narrowly tailored is consistent with the aims of the statute to promote efficiency and reciprocity.

Here, each of these discretionary factors weighs in favor of granting the Application.

## 1. Neither Mathur nor Emblaze One Inc. Will Be Parties to the UK Litigation

First, HHL's need for the discovery from Mathur and Emblaze One Inc. by means of §1782(a) is heightened by the fact that they will not be defendants in the UK litigation. As the Supreme Court noted: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel,* 542 U.S. at 264-65. As such, relief under §1782(a) may not be warranted where the relevant tribunal does not need the assistance. *Id.* In contrast, here, Mathur and Emblaze One Inc. possess evidence relevant in the foreign proceedings, but will not be a party to the case. Indeed, they will not be brought before any foreign tribunal for the purpose of obtaining the evidence currently in their possession, nor is the discovery sought from them within the jurisdictional reach of the courts of the United Kingdom. Nonetheless, documents in their possession and their testimony are directly relevant to HHL's claims in a United Kingdom action. This weighs in favor of granting the Application.

## 2. The High Court of London Would Be Receptive to the Discovery Sought

Second, there is no reason to believe that the High Court of London would not be receptive to this Court's grant of the discovery sought. The United Kingdom is a party to the New York Convention, and the courts of those jurisdictions are common law judicial tribunals. Therefore, there is no reason to believe that a UK court would object to this

14.

Court's assistance with discovery that will, by providing information concerning the transfers of HHL's funds, facilitate the UK litigation and the potential recovery of those funds.

Further, the courts have held that the liberal policy of granting assistance favors allowing a petitioner the discovery sought so that the foreign court itself may determine the admissibility or relevance of the evidence obtained. *See In re Euromepa S.A*., 51 F.3d 1095, 1099-1100 (2d Cir. 1995) (explaining that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," and that "[a]bsent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'"); *In re Application of Grupo Qummam*, No. M 8-85 (DC), 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first.").

### 3. HHL Is Not Attempting to Circumvent Any Proof-Gathering Restrictions of the High Court of London

Third, the discovery is centrally relevant to any proceedings before the High Court of London and would not conflict with or circumvent any foreign proof-gathering restrictions. Courts have interpreted this discretionary factor as an inquiry into the petitioner's good faith: "[A] district court could consider whether the §1782(a) request conceals an attempt to circumvent foreign-proof gathering restriction or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65; *see, also, In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf,* Case No. Ml 9-88, 2006 WL 3844464, at *7 (S.D.N.Y.  Dec. 29, 2006).  Applicant's request here is made in good faith and not for purposes of harassment. *See, Brandi-Dohorn v. IKB Deutsch Industriebank AG,* 673 F.3d 76, 81 (2d Cir. 2012). As previously noted, Mathur and Emblaze One Inc. are outside the

jurisdictional reach of the courts of the United Kingdom. Thus, 28 U.S.C. §1782 is a proper and necessary method by which to obtain the critical evidence sought by HHL.

### 4.   The Discovery Seeks Information and Documents Relevant to HHL's Claims Against Fletcher and His Asserted Defenses to Liability

HHL seeks information and documents from Mathur and Emblaze One Inc. regarding to the BOL credit and debit card transactions processed through Respondents' two payment solutions; any related agreements with any bank, processor, or other company used to process those transactions; any claimed debits, chargebacks, refunds, fines, fees, penalties, or other offsets to amounts owed to HHL and BOL; and related matters.

In addition to Mathur and Emblaze One, Inc., HHL also seeks information and documents related to the following entities: Canon Payments, GatewayPRO, Marbs One Ltd, Switch2Secure, and Technomatix Ltd, as each of these entities was involved in the procurement of Fletcher's two payment solutions for HHL and BOL's use. As more fully described in Section III.A, above: HHL sourced Fletcher's initial payment solution through **Switch2Secure**. HHL sourced Fletcher's second solution through **GatewayPRO**, which also provided HHL with an MSA for MID used for this second payment solution. That MSA identified **Technomatix LTD**, doing business as **Canon Payments**, as the counterparty to the MSA.

**Marbs One** appears to have been a UK entity where Fletcher was the lone director and shareholder. Attached to the Li Decl. as Exhibits J, K, and L are certain filings made in the United Kingdom for an entity named Marbs One Ltd., which reflect Fletcher as its sole director and shareholder. The entity was dissolved on July 24, 2018. Also, Fletcher used a "marbsone.com" email account when corresponding with HHL representatives and solicitor Jones. (See, e.g., Li Decl. Exs. H and I; Jones Decl. Ex. B.)

HHL also seeks documents and communications with two individuals: Jason Silver and "Simos." As noted above, Silver claims to have provided the MIDS, but his emails were likely simply another attempt at delaying payment, which HHL seeks to confirm through discovery. With respect to "Simos," it is unclear who this individual is, although he was copied on correspondence between Fletcher and Mathur regarding the payments due under the second

payment solution. More specifically, Mathur told Fletcher in a January 29, 2019 email that he was communicating with "Simos" regarding the processing activities of the "merchant", which, as noted in the subject line of the e-mail, was BOL. (See Li Decl. Exs. H & I, passim.)

Finally, HHL respectfully submits that its document requests will not be onerous or burdensome for Mathur or Emblaze One Inc. Notably, in opposing HHL's Prior Application, Mathur claimed that he had few if any documents responsive to a broader set of document requests than those at issue here: "If I did have any responsive documents, which I am unlikely to given my limited involvement in the underlying transactions, I would not be able to produce them to a third party given the privacy and business interests of these third parties." (Opposition, pp. 19-20, ¶ 4.)

Likewise, during counsels' meet and confer discussions prior to the filing of the instant application, Respondents' counsel acknowledged that "[t]here are actually very few responsive documents that my clients have in their possession anyways." (Lee Decl. Ex. O.)

## VII.   <u>CONCLUSION</u>

Based upon the foregoing, HHL respectfully requests this Court grant the instant Application in its entirety.

Dated:  April 24, 2020

Respectfully Submitted,
**LAW OFFICES OF MICHAEL JASON LEE, APLC**

*/s/ Michael Jason Lee*
Michael Jason Lee, Esq.
michael@mjllaw.com
Attorney for Hedrick House Limited